

222 Delaware Avenue • Suite 900  
P.O. Box 25130 • Wilmington, DE 19899  
Zip Code For Deliveries 19801

Writer's Direct Access:  
(302) 429-4232  
Email:  sbrauerman@bayardlaw.com

July 9, 2013  
Redacted Version Filed: July 26, 2013

**BY CM/ECF & HAND DELIVERY (Redacted Version)**  
The Honorable Richard G. Andrews  
United States District Judge  
United States District Court for the District of Delaware  
844 North King Street  
Wilmington, DE 19801

   Re: *Parallel Iron, LLC v. Hitachi Data Systems Corp., et al,* C.A. No. 12-766-RGA

Dear Judge Andrews:

 Plaintiff Parallel Iron, LLC ("Parallel Iron") submits this letter in accordance with the Court's June 17, 2013, Order (D.I. 223).  Parallel Iron requests that the Court deny Defendants Hitachi Data Systems Corporation and BlueArc Corporation's (collectively "HDS") request to strike Parallel Iron's Amended 4(a) Disclosures.

 HDS' request that the Amended Disclosures be stricken is premised entirely on their assertions that (1) the Amended Disclosures were untimely; and (2) propounded in bad faith. Neither position has merit.  In fact, amending 4(a) disclosures is expressly allowed and invited by the Delaware Default Standard for Discovery.  Further, given the early nature of this case, HDS cannot have suffered any prejudice as a result of the amendment.  Accordingly, HDS' requested relief should be denied.

  **A.** **Amending 4(a) Disclosures Is Expressly Permitted Under Delaware Law.**

 As an initial matter, HDS' contention that Delaware law precludes amendment to 4(a) disclosures is incorrect and contradicted by the clear language of the rules.  Specifically, Rule 4 of the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information (the "Default Rules") provides that "[a]s these disclosures are initial, ***each party shall be permitted to supplement***."  (Default Rules at Rule 4 n. 2 (emphasis added).)  Nothing in the Court's Scheduling Order excludes or modifies this portion of the Default Rules.

 Accordingly, supplementation of the 4(a) disclosures is not "improper" as HDS assets (Letter at 1) but is in fact "permitted" and expressly allowed.  For this reason alone, HDS' request should be denied.

  **B.** **Parallel Iron's Amended 4(a) Disclosures Were Not Propounded In Bad Faith.**

 HDS' contention that the Amended 4(a) Disclosures were served in bad faith because



The Honorable Richard G. Andrews<br>
July 9, 2013<br>
Page 2

"Parallel Iron has known . . . since May 2012" that the originally accused pNFS product did not exist is incorrect. The entire basis for this proposition is (1) conversations between HDS' counsel and Parallel Iron's prior litigation counsel (SNR Denton) during a lawsuit that predates the filing of this action; and ███████████████████████████████████████████ ███████████████████ (Letter, Ex. A (Ibester Decl.) ¶¶ 3-8). HDS has not provided any evidence that it ever took the position in this lawsuit that no pNFS products exist prior to providing the declaration to that effect on April 1, 2013.

Indeed, HDS admits that prior to the service of the Amended 4(a) Disclosures "Parallel Iron had only lawyer representations (not a signed declaration) that ████████████████████ (Letter at 3.) Accordingly, at the time it served its initial 4(a) disclosures, Parallel Iron appropriately sought discovery concerning HDS' use or planned use of pNFS products as was suggested from the publically available information that Parallel Iron obtained prior to bringing suit. After receiving the declaration stating that HDS had no pNFS products or technical documents to produce, Parallel Iron researched whether HDS had any other infringing products and amended its 4(a) disclosures in due course—starting only two weeks after the declaration was received.

Although HDS chides Parallel Iron for "improper litigation conduct" and strategy[1] (Letter at 1), the timing of the delivery of the declaration shows the contrary. Parallel Iron's identification of pNFS as an Accused Instrumentality was served on February 15, 2013. Nonetheless, HDS waited a month and a half, until April 1, 2013, to provide the declaration stating that it did not make, and had no plans to make, the product. Further, after the Amended 4(a) Disclosures were served on April 15, 2013 and April 30, 2013, HDS waited until early June—and until after Parallel Iron propounded Infringement Contentions based on the products asserted in the Amended 4(a) Disclosures—to inform Parallel Iron that HDS believed the amendments to be improper and that this discovery conference was warranted. HDS fails to explain the reason for either of these delays.

### C. HDS Has Not Suffered Any Prejudice From The Amendments.

HDS' contentions that it has suffered "inevitable prejudice" lack merit. This case is still in the very early stages. Although HDS claims that the "schedule must now be compressed" to accommodate the products listed in the Amended 4(a) Disclosures, HDS does not state what deadlines need to be moved, or how much time is required. Had HDS proposed an amended scheduled, Parallel Iron might have been willing to accommodate.[2]

---

[1] Tellingly, HDS does not attempt to argue that Parallel Iron received any benefit from this "improper litigation conduct" because none exists. Obviously, it would have benefitted Parallel Iron to have named all Accused Instrumentalities in its initial disclosure, thus expediting its receipt of the necessary discovery. The failure to do so was the result of nothing more than a miscommunication between the various entities representing Parallel Iron, and the number of Defendants against which Parallel Iron has brought suit.

[2] Indeed, Parallel Iron recently agreed to give the Defendants a two-week extension on their forthcoming invalidity contentions.



HDS' additional claim that it is prejudiced as its counsel needs more time to prepare "non-infringement arguments" and "invalidity contentions" is belied by its own evidence submitted to the Court. Indeed, the Ibester Declaration asserts that HDS has prepared a presentation "conclusively rebutting Parallel Iron's infringement theory with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—the products that are listed in the Amended 4(a) Disclosures. (Letter, Ex. A ¶ 8. *See also* Letter at 1 ("HDS rebutted each of Parallel Iron's . . . infringement theories" with respect to the products listed in the Amended 4(a) Disclosures.) If HDS has already developed rebuttal argument to Parallel Iron's infringement theories that it feels are "conclusive," then there is no reason HDS' counsel should require additional time to develop arguments based on the products listed in the Amended 4(a) Disclosures.

      D.     **HDS' Proposed Relief Is Unclear Would Waste Judicial Resources.**

The effect of HDS' requested relief of striking Parallel Iron's 4(a) disclosures is unclear. Striking Parallel Iron's 4(a) disclosures would not result in the dismissal of the action. Further, Parallel Iron has already propounded infringement contentions based on the products in the Amended 4(a) Disclosures pursuant to 4(c) of the Default Rules and the Court's Scheduling. The service of the infringement contentions renders the objections to the 4(a) disclosures moot.

In any event, precluding any claims based on the products set forth in the Amended 4(a) Disclosures would waste judicial resources. HDS apparently contends, in direct contravention to the Default Rules, that if a plaintiff fails to list a product in its initial 4(a) disclosures it is forever barred from stating any claim based on those products in that action. Accordingly, if the existence of another infringing product were learned in discovery, the plaintiff would be forced to file a new lawsuit to state claims based on those products. If it is decided that Parallel Iron cannot proceed with claims concerning the products listed in the 4(a) disclosures in this case, Parallel Iron would file a new and separate lawsuit against HDS, which would require the parties to repeat much of the early stages of this litigation. HDS offers nothing to justify this waste of time and judicial resources.

In sum, HDS has shown no reason to deviate from the Default Standards which treat 4(a) disclosures as "initial" and freely permit "supplementation." Parallel Iron has fully complied with these rules in this case. Accordingly, Parallel Iron respectfully requests that the Court deny HDS' requested relief.

                                                   Respectfully submitted,

                                                   /s/ Stephen B. Brauerman

                                                   Stephen B. Brauerman (sb4952)

cc:  All Counsel